## BENT & COTTRELL v. MINK ET AL.

1. **Slander**: SUBMISSION OF LIBEL: EVIDENCE. Before an alleged libel can be submitted to the jury, there must be sufficient evidence introduced to make a *prima facie* case against the defendant as the author of the libel.

2. ———: EVIDENCE: THREAT. A *prima facie* case is made when the defendant is shown to have *threatened* to write the paper which contains the alleged libel. ROTHROCK AND ADAMS, JJ., *dissenting*.

3. ———: ———. The fact that an article sent to one newspaper by defendant, and refused, was the same in effect as one published in another does not sufficiently connect the two to justify the admission of the publication in evidence.

*Appeal from Cedar District Court.*

THURSDAY, OCTOBER 4.

ACTION to recover damages for the publication of an alleged libel which it is claimed the defendants caused to be published in the "Inter-Ocean," "Chicago Journal," "Davenport Democrat," and "Cedar Post." The publication was denied.

When copies of the "Chicago Journal" and "Cedar Post," in which it was claimed the libel had been published, were offered in evidence, the defendants objected thereto, and the alleged libelous publications contained therein were excluded "until the connection of the defendants with their publication was proved." Whereupon the defendants demurred to the evidence, which being sustained, judgment was rendered against plaintiffs for costs, and they appeal.

*Boal & Jackson* and *Piatt & Carr*, for appellants.

*Wolf, Landt & Yates*, for appellee.

SEEVERS, J.—I. As the plaintiffs at the time the ruling was made excluding the newspapers did not propose to introduce any other or further evidence tending to show that defendants were the publishers of the alleged libels it was entirely proper for the court to refuse to admit the same if the testimony did not, in the opinion of the court, warrant a submission of the question to the jury whether the defendants were the publishers.

Ordinarily, the manner in which evidence shall be introduced will not be controlled by the court. But when testimony is objected to as inadmissible, counsel cannot avail themselves of this rule unless they have other evidence bearing on the question which they propose to introduce in the further progress of the cause and can satisfy the court of their good faith and intent in this respect.

II. The material question, however, is: Was there sufficient evidence before the court to warrant the submission of the question whether the defendants in a legal sense were publishers of the alleged libels.

1. SLANDER: submission of libel: evidence.

There was nothing tending to show they were the owners, publishers, or in any manner connected with either of said newspapers. Nor was there any direct proof they or either of them composed or delivered the libelous matter to any one.

The only proof of a publication by either of them in the "Cedar Post" was as follows:

"CLARENCE, Nov. 16th, 1873.

"FRIEND MARIA:—Your letter received some time ago and answered, but I feel as to write you again, and give you the news of Clarence, as T. &. B. Mink closed up the Banking House of Bent & Cottrell, by the United States Marshal, for a large amount of money due us on our judgment from the United States Court, and we made our demand of them, could not pay, and so the U. S. Marshal made a levy on all, safe and vault, and its contents. Those men have signed that man's bonds, and did try and (break) us up. But we broke them slick and clean; also the United States Marshal guarded the

bank night and day, and such an excitement you never saw, and we hold all the property, and if they don't pay us in twenty days we will sell all their property by the United States Marshal for our claim. People of Clarence cheered T. & B. Mink for their fine figuring, and we made our point— you bet. You better look in the Allenton "Democrat" for some weeks and you will see a sketch on the matter. I shall write a few lines to old Mr. Seberling, as H. P. Grimm told him we had failed last spring. Now I will tell him we were, in shape to lock up our bank, and done so; and he should ask Grimm how we were doing. Now we done the best thing that was ever done in Iowa; everybody says so. You bet I feel good to conquer our enemy, and close their doors; we are all right now. This did change the tone of Clarence, you may well know. All well. Hope to hear from you soon. I must close, for we are writing for Tipton papers on this bank matter. Tell me when you all leave Allenton. Good-night. No more from your friend.          Respectfully,

          T. H. MINK."

The alleged libel was published in the "Cedar Post," on the 19th day of November, 1876, and was as follows:

"T. & B. Mink, gentlemen well known throughout this county, closed up the banking house of Bent & Cottrell last Friday, having made a demand on Bent & Cottrell for their claim due them on the judgment obtained in the United States Circuit Court, at Des Moines last spring. You doubtless remember the suit between T. & B. Mink, of Clarence, and Mr. Hollihan, of Chicago, decided in favor of the former. On the afternoon of the 14th, as the freight train came along, going east, the United States Marshal stepped off; of course the Messrs. Mink expected him, but no one else. Undoubtedly it was quite a surprise to the people of Clarence. The United States Marshal went to work and made his demands upon Bent & Cottrell for the above amount. Mr. Bent said they had not the money, but if T. & B. Mink would give them fifteen days time, they would try and pay the amount. This was refused by Messrs. Mink, as they thought they had waited long enough already. Then the United States Marshal made

a levy on the banking house, also safe and vault, and all its contents; the keys were demanded by the Marshal, but refused. Then the Marshal put guards over the bank, which closed up the bank about 7 o'clock in the evening. Mr. O. E. Young was appointed by the United States Marshal to guard the bank, as Mr. Young is capable for any emergency. On Saturday morning the Marshal levied on all of the property that could be found belonging to Bent & Cottrell, and gave them notice of sale in twenty days under the hammer. Our streets were crowded this morning, when the report was made known, and was stated that Bent & Cottrell had failed; everybody excited, inquiring for Messrs. Mink to secure checks and drafts on Spain, Italy and France, and others wanted to make their deposits, as they are now called our bankers. I wish Messrs. T. & B. Mink success, as they are among our first-class business men. Bent & Cottrell went on Hollihan's bond. So you see they will have it to pay. I think it will be a lesson to these gentlemen at last. They will not be so ready to go on a stranger's bond to the injury of our citizens. It is not business."

The writer of the letter, one of the defendants, tells his correspondent: "I must close, for we are writing for Tipton papers on this bank matter." The "Cedar Post" was published at Tipton, and on the third day after the date of the letter the alleged libel appears in said paper, and it is in relation to the "bank matter" he had stated he was writing to the papers about. The court had the right, and it was its duty, to look at the alleged libel for the purpose of determining the question presented. Taking the letter and alleged libel together, and considering the dates of the two transactions, we are of the opinion the court erred in the ruling made. It seems to us the evidence was sufficient, *prima facie*, to satisfy the court the defendants, or rather one of them, caused the publication. Whether it would have been sufficient to have satisfied the jury is not the question, but had a *prima facie* case been established warranting the submission of the question at issue to the jury.

There is great similarity between this question and that of

a threat made, and the thing threatened is afterward done. For instance, suppose one threatens to take another's life, and within three days the latter is found dead, and the former is being tried for the crime. Now, some one has committed this offense, the body of which is that the party has been murdered, and the point to be solved is, who did it. Certainly the threats made would be admissible for this purpose. In the present case the body of the offense is the publication. The fact that they have threatened to write such a paper is sufficient evidence, *prima facie*, when unexplained, that they, or rather the writer, did so. We desire to be understood, it made a sufficient *prima facie* case to have made it the duty of the court to have submitted the question to the jury. The publication may be proved by direct or indirect evidence. 1 Hilliard on Torts, 336. As to the latter, no general rule can be laid down. It is, and of necessity must be, as varied as are the circumstances and conditions of human affairs, and each case must form a rule unto itself.

*margin note: 2. ——: evidence: threat.*

. The ultimate question in the case was for the jury to determine; hence the finding of the court below, that a *prima facie* case had not been proved, does not conclude this court from examining, and for itself determining, what is the proper rule in the premises. There was no conflict in the evidence, nor doubt or cavil as to what it was. Whether a proper case had been proven, one that should be submitted to the jury, was a question of law.

III. The article published in the "Chicago Journal" was as follows:

"CLARENCE, IOWA, Nov 18, 1876.

"On the 14th inst. the banking house of Bent & Cottrell of this place was closed on an execution by the sheriff, who has placed a guard over it."

The testimony to connect the defendants with this publication consisted of a letter which was received by the "Chicago Times" from one of defendants, in which the writer stated that the bank of Bent & Cottrell was closed up. The writer stated it was an item for the paper, but it was not published therein. An item to the same effect was published in the

"Chicago Journal" on the day after the letter was received by the "Times." The evidence, however, fails to show that the article in the "Chicago Journal" which was offered in evidence is the same even in substance with the letter sent the "Times," or that was published in the "Journal" on the day after the letter was received by the "Times." All that appears is that one of defendants wrote to the "Times" stating that the "bank of Bent & Cottrell was closed up," but whether this was libelous we do not know, and the article published in the "Journal" was to the same effect, and therefore it might not have been libelous. There is no connection shown between the letter and publication in the "Journal" and the article offered in evidence.

For the error in refusing to admit the "Cedar Post" and the alleged libelous matter published therein in evidence, the cause must be

REVERSED.

ROTHROCK, J., *dissenting.*—I cannot concur in the foregoing opinion of the majority of the court. "In case of libel before any evidence can be given of its contents *prima facie* evidence must be given of a publication by defendant." Starkie on Slander, Vol. 2, Sec. 14. "After proof of publication by the defendant, the libel itself is to be read." Philips on Evidence, Vol. 2, p. 239.

When plaintiffs offered to read the alleged libels to the jury, they had introduced all their other evidence. They did not propose to introduce additional evidence connecting the defendants with the publication. The question presented was whether there was *prima facie* evidence of publication by the defendants or either of them. The court below held that it was insufficient as a *prima facie* showing. *Prima facie* evidence of fact is, in law, sufficient to establish the facts unless rebutted. Bouv. Law Dict., Vol. 2, p. 370. That the evidence which it is claimed connected the defendants with the publication of any of the alleged libels is insufficient to make a *prima facie* case, I have no manner of doubt. The only fact which it claims rises to the dignity of legal evidence is

the statement in the letter to Maria Shaffer that defendants were " writing for Tipton papers on this bank matter."

· It was not shown what, if anything, the defendants or either of them wrote and published, or procured others to write and ·publish, in Tipton papers. The writing of a libel, however gross it may be, unless published, is not actionable. It is no ·more than the possession of one's thoughts. The alleged libel afterward published in the " Cedar Post" does not purport to have been written by defendants or either of them, but by another person. It was not shown that the libel was in the handwriting of either of the defendants, or that it was at any time in their possession or under their control.

Without resorting to the ordinary sources of evidence to prove the publication, as by calling witnesses who had some personal knowledge of the fact, the plaintiffs insisted that the court should, by reason of this merely suspicious circumstance, as it appears to me, hold that the evidence was sufficient to connect the defendants with the publication, and unless rebutted there should be a verdict for plaintiffs. This ·would have been the effect of ·the ruling as has been seen from the definition of *prima facie* evidence above given.

· It was the court's duty to weigh the evidence and determine the question. In my judgment the ruling was correct, ·but as it was a ruling upon the sufficiency of evidence this court should not disturb it, unless the conclusion reached by .the court below was palpably against the evidence. ADAMS, J., concurs with me in this dissent.